UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MYCOLA PANCHISHAK,

                                        Plaintiff,

        v.

COUNTY OF ROCKLAND *and* FRANCIS
McSHARAR,

                                        Defendants.

No. 20-CV-10095 (KMK)

OPINION & ORDER

Appearances:

Mycola Panchishak
New City, NY
*Pro Se Plaintiff*

Robert B. Weissman, Esq.
Saretsky Katz & Dranoff, LLP
Elmsford, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Pro se Plaintiff Mycola Panchishak ("Plaintiff") brings this Action for creation of a

hostile work environment and discrimination based on his sex and national origin under

42 U.S.C. §2000e, *et. seq.* ("Title VII") and the New York State Human Rights Law

("NYSHRL") against the County of Rockland (the "County") and Francis McSharar

("McSharar"; collectively, "Defendants"), as well as violations of his Fourteenth Amendment

right to equal protection and Fifth Amendment right to due process under 42 U.S.C. § 1983.

Liberally construed, Plaintiff's Complaint can also be read to include New York state law claims

for negligent and intentional infliction of emotional distress.  Before the Court is Defendants

Motion to Dismiss (the "Motion").  For the reasons that follow, the Motion is granted.

I.  Background

A.  Factual Background

The following facts are taken from Plaintiff's Complaint, (Compl. (Dkt. No. 1)), and the accompanying documents attached to it, and are assumed true for purposes of deciding the Motion.

Plaintiff has been employed as a correction officer in Rockland County Jail (the "Jail") since October 18, 2004.  (*Id*. at 11.)[1]  Plaintiff is Ukrainian (of Slavic origin).  He is the only Ukrainian employee at the Jail.  (*Id*.)  Plaintiff speaks with a heavy accent.  (*Id*.)

On May 14, 2008, another correction officer, Officer Herbison said to Plaintiff: "You are fucking stupid, asshole."  (*Id*. at 12)  Herbison also told Plaintiff, "You should become a citizen first!"  (*Id*.)  Correction officer Dascalu, who witnessed Herbison make these remarks to Plaintiff, wrote a report about it.  (*Id*.)  A couple weeks later on May 28, 2008, Plaintiff had a conversation with Chief William J. Clark and Captain John Liska.  (*Id*.)  Based on Plaintiff's complaint, they determined that Herbison would receive a disciplinary paper in his file for one year.  (*Id*.)

On May 13, 2009, Plaintiff was repeatedly harassed and belittled by Herbison.  (*Id*.)  Plaintiff's report of the incident indicated that Plaintiff had asked Herbison to open doors in a cell unit so that he could conduct an inmate headcount, but Herbison refused and made Plaintiff wait while he spoke to another correction officer.  At one point, Herbison said to Plaintiff "[d]on't you see I'm talking?"  (*Id*. at 23–25.)  The inmates who observed this interaction were "quite entertained" and joked that Herbison was not going to open the cell door for Plaintiff.  (*Id*.

---

[1] Because the numbering of paragraphs in Plaintiff's Complaint is inconsistent and he has also attached various exhibits as part of the Complaint, the Court cites to the page numbers in the PDF version of the Complaint available on ECF.

at 23.)  Herbison taunted Plaintiff and delayed opening the door for him.  (*Id*. at 24.)  Eventually Herbison opened the cell door for Plaintiff.  Plaintiff submitted a report complaining about Herbison's conduct, but there were no repercussions.  (*Id*. at 13.)

Years later, in April 2014, Plaintiff was "sexually and publicly insulted" in front of several inmates he supervised by a County maintenance person, McSharar, who occasionally performed maintenance at the Jail.  (*Id*. at 12.)  During the incident, McSharar was under the influence of some substance.  (*Id*.)  He yelled at Plaintiff, "I am going to fuck you in the asshole with this broomstick."  (*Id*.; hereinafter referred to as the "April 2014 incident.")  Plaintiff was traumatized by this and developed an "awful, debilitating, incurable" disease—eczema.  (*Id*. at 13.)  Plaintiff's eczema was stress related and caused by McSharar's "brutal public sexual assault" of Plaintiff.  (*Id*.)

On November 12, 2014, Plaintiff was "publicly harassed and humiliated" by McSharar (who again was under the influence of a substance) and maintenance staff Steve Wren in front of 15 inmates that Plaintiff was supervising at the time.  (*Id*.)  According to a report filed by Plaintiff, McSharar and another maintenance person came to the Jail to fix a clog in the sink of a cell.  (*Id*. at 27.)  After fixing the clog, the maintenance men left the pod and, after exiting the pod door, McSharar turned around and yelled to Plaintiff, "Lock the pod!  Lock the pod now! We have the tools, lock the pod!  You heard what they said, lock the pod!"  (*Id.*)  McSharar then "stared [Plaintiff] down" and said, "You'll see what happen[s]!"  (*Id.*; hereinafter referred to as the "November 2014 incident.")  The Jail investigated Plaintiff's report and informed Plaintiff that McSharar admitted to being rude but those investigating did not perceive him to be under the influence.  (*Id*. at 33.)

Several years later, in early January 2020, Plaintiff was harassed and humiliated again by McSharar when an inmate asked Plaintiff, "Mick! [O]pen the door!" and he then said, "Fuck you Mick!"  (*Id*. at 13; hereinafter referred to as the "January 2020 incident.")  Both Wren and another correction officer, Officer Taggar witnessed McSharar express this to Plaintiff.  (*Id*. at 14.)  The most recent incident took place on March 3, 2020.  (*Id*.)  McSharar said "he is an [i]diot" in reference to Plaintiff in front of Wren and another correction officer, D. Williams.  (*Id*. at 14, 35; hereinafter referred to as the "March 2020 incident.")  Plaintiff alleges that he was being "systematically assaulted sexually and as a minority, based on National Origin, for many years in atmosphere of Hostile Work Environment!"  (*Id*.)  From the comment by McSharar, Plaintiff felt that he was going to have a stroke, he sweat profusely, his heartbeat accelerated, he had blurry vision, terrible head and back aches, and his temples felt as though they were about to explode.  (*Id*.)  Plaintiff had an anxiety attack and felt an "unbearable urge to scratch his face" and to "'tear off [his] itchy eyelids and nostrils.'"  (*Id*.)  Plaintiff's eczema flared up after this incident.  (*Id*.)  Beyond this immediate reaction, Plaintiff experienced sleepless nights, two profuse nose bleeds, and extremely high blood pressure.  (*Id*.)  The following day, on March 4, 2020, Plaintiff returned to work but was unable to perform his duties due to fatigue, inability to concentrate, blurry vision, an unbearable headache, and an urge to scratch his face.  (*Id*. at 15.)  Plaintiff was relieved of his duties that day.  (*Id*.)  Plaintiff was seen by medical personnel at the Jail, at Urgent Care, and by his own physician over the course of several months for symptoms related to this incident.  (*Id*. at 15–16.)

On October 21, 2020 Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  (*Id*. at 6, 8, 9.)  The EEOC found Plaintiff's

charge to be unsubstantiated and issued Plaintiff a "right to sue letter" on October 23, 2020.  (*Id.* at 6, 8, 9–10.)

### B.  Procedural History

Plaintiff filed his Complaint on December 2, 2020.  (Dkt. No. 1.)  On December 31, 2020, Defendants filed the Motion and accompanying papers.  (Defs.' Not. of Mot. (Dkt. No. 7); Defs.' Mem. of Law in Supp. of Mot. To Dismiss. ("Defs.' Mem.") (Dkt. No. 10).)  On January 6, 2021, the case was reassigned to this Court.  (*See* Dkt. (entry for Jan. 6, 2021).)  On January 15, 2021, Plaintiff filed his Opposition.  (Pl.'s Opp'n to Defs.' Mot. To Dismiss ("Pl.'s Mem.") (Dkt. No. 14).)  On January 21, 2021, Defendants filed their Reply.  (Defs.' Reply Mem. of Law in Supp. of Mot. To Dismiss ("Defs.' Reply") (Dkt. No. 15).)  On February 3, 2021, Plaintiff filed a Sur-Reply.  (Dkt. No. 17.)  On February 4, 2021, Defendants filed a letter objecting to the filing of Plaintiff's Sur-Reply.  (Dkt. No. 18.)  Even though Plaintiff did not request leave to file a Sur-Rely, and thus was in violation of the Court's Individual Rules and the Local Rules, the Court will consider it in light of his pro se status.[2]

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

---

[2] *See Dash v. Bank of Am. Corp.*, No. 18-CV-4807, 2019 WL 1780140, at *3 n.9 (S.D.N.Y. Apr. 23, 2019) (accepting sur-reply of pro se litigant on motion to dismiss); *see also Munoz-Nagel v. Guess, Inc.*, No. 12-CV-1312, 2013 WL 1809772, at *1 (S.D.N.Y. April 30, 2013) (noting that while the court's individual rules require a party to obtain permission prior to filing a sur-reply, given plaintiff's pro se status, the court considered it in connection with the motion to dismiss).

(alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must

confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

Where, as here, a plaintiff proceeds pro se, the court "must construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (citation omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (citation and italics omitted)).

B. Analysis

1. Title VII & NYSHRL Claims

Title VII "prohibits the creation of a hostile work environment." *Vance v. Ball State Univ.*, 570 U.S. 421, 427 (2013). "In order to establish a hostile work environment claim under Title VII, a plaintiff must produce enough evidence to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (quotation marks omitted) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010)). A plaintiff must demonstrate that he was subjected to the hostility because of his membership in a

protected class.  *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999).  In

general, the actions taken by the defendant "must be more than 'episodic; they must be

sufficiently continuous and concerted in order to be deemed pervasive.'"  *Alfano v. Costello*, 294

F.3d 365, 374 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir.

1997)).  The test for determining whether a workplace is a hostile work environment has both

subjective and objective elements.  *See id.*  "[T]he misconduct shown must be 'severe or

pervasive enough to create an objectively hostile or abusive work environment,' and the victim

must also subjectively perceive that environment to be abusive."  *Id.* (quoting *Harris v. Forklift

Sys., Inc.*, 510 U.S. 17, 21 (1993)).

When determining whether an objectively hostile work environment exists, courts must

consider the totality of the circumstances, including the frequency, severity, and offensiveness of

the allegedly discriminatory conduct, whether the conduct was physically threatening or

humiliating, and whether the conduct unreasonably interfered with an employee's work

performance.  *See Patterson v. County of Oneida*, 375 F.3d 206, 227 (2d Cir. 2004).  The Second

Circuit "treats the first two of these factors—the frequency and the severity of the misconduct—

as the principal focus of the analysis."  *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73,

82 (2d Cir. 2009).  "Core hostile work environment cases involve misconduct that is both

frequent and severe, for example, when a supervisor utters blatant racial epithets on a regular if

not constant basis and behaves in a physically threatening manner."  *Id.* (quotation marks

omitted).  Finally, "[i]t is axiomatic that the plaintiff also must show that the hostile conduct

occurred because of a protected characteristic."  *Richards v. N.Y.C. Dep't of Educ.*, No. 13-CV-

16, 2015 WL 4164746, at *10 (S.D.N.Y. July 10, 2015) (quotation marks omitted).  But an

"environment which is equally harsh for both men and women [or for all races] . . . does not

constitute a hostile working environment" under Title VII. *Brennan*, 193 F.3d at 318. Similarly, personal animus is "insufficient to establish a claim under Title VII." *Lennert-Gonzalez v. Delta Airlines, Inc.*, No. 11-CV-1459, 2013 WL 754710, at *8 (S.D.N.Y. 2013). "Because New York courts require the same standard of proof for claims brought under the NY[S]HRL as for those brought under Title VII, [the Court will] analyze these claims in tandem." *Leopold v. Baccarat, Inc.*, 174 F.3d 261, 264 n.1 (2d Cir. 1999); *see also Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 117 n.2 (2d Cir. 2010) ("We review discrimination claims brought under the NYSHRL according to the same standards that we apply to Title VII discrimination claims.").

To bring a timely claim under Title VII, a plaintiff must file a charge with the EEOC within 300 days of the alleged discriminatory conduct. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78–79 (2d Cir. 2015) (citing 42 U.S.C. §§ 2000e-5(e)(1) (Title VII)). "This statutory requirement is analogous to a statute of limitations." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 396 (1982)). Title VII claims accrue when the plaintiff "knew or had reason to know of the injury serving as the basis for his claim." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999). However, "[w]hen a plaintiff experiences a continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994) (quotation marks omitted).

The statute of limitations for actions under NYSHRL is three years. N.Y. C.P.L.R. § 214(2). Although the Second Circuit has not yet resolved the question of whether the filing of an EEOC charge tolls the statute of limitations for NYSHRL claims, courts in this District have concluded that it does. *See, e.g., Schneider v. Wal-Mart Stores, Inc.*, No. 16-CV-2010, 2019 WL

294309, at *3 (S.D.N.Y. Jan. 23, 2019) (collecting cases).  The continuing violation doctrine

applies equally to NYSHRL and Title VII claims.  *See Taylor v. City of New York*, 207 F. Supp.

3d 293, 302 & n.5 (S.D.N.Y. 2016).  Hostile work environment claims, therefore, may "be based

on events outside the statute of limitations period as long as (1) the acts occurring before the . . .

cutoff constitute 'part of the same actionable hostile work environment practice,' and (2) at least

one act contributing to the claim occurs within the filing period."  *Clarke v. InterContinental

Hotels Grp., PLC*, No. 12-CV-2671, 2013 WL 2358596, at *8 (S.D.N.Y. May 30, 2013) (quoting

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120 (2002)).

As a threshold matter, Defendants argue that Plaintiff's hostile work environment claim

fails because it is premised on time-barred discrete acts.  (Defs.' Mem. 7–9.)  Plaintiff filed his

EEOC complaint on October 21, 2020, which would make the 300-day filing limitation for Title

VII claims December 26, 2019.  (*See* Compl., Ex. B.)  As such, Plaintiff's complaints that fall

outside of that period are untimely unless such claims include at least one incident occurring

December 26, 2019 or later that is "part of the same actionable work environment practice."

*Morgan*, 536 U.S. at 120.  In order for any discriminatory conduct to be part of the same

actionable Title VII violation, the timely offensive incident must be "sufficiently related" to the

incidents outside of the limitations period.  *Taylor*, 207 F. Supp. 3d at 309.  The only incidents

that fall within the statutory time period are the January 2020 and the March 2020 incidents

involving McSharar.  (Compl. at 13–14.)  The 2008 and 2009 comments made to Plaintiff by

Herbison nearly a decade earlier have no plausible connection to the comments made by

McSharar in 2020, as the incidents involve two different employees and wholly unrelated

conduct over a decade apart.  *See Taylor*, 207 F. Supp. 3d at 309–10 (finding conduct of a

supervisor not "sufficiently related" when the timely conduct occurred at least six years later and

10

involved different employees); *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 405 (S.D.N.Y. 2012) (dismissing hostile work environment claims as untimely where they "involve[d] wholly different employees" and "happened at least five years prior" to the next incident of which the plaintiff complained); *Drees v. County of Suffolk*, No. 06-CV-3298, 2009 WL 875530, at *8 (E.D.N.Y. Mar. 30, 2009) (holding no continuous violation where, inter alia, timely incidents "involved different supervisors" than earlier incidents and "there were no incidents whatsoever for at least [five] years"). Because the 2008 and 2009 comments fall outside the relevant time period and are not sufficiently related to the timely conduct at issue, the Court will not consider them. (Compl. at 12–13.) The other conduct that falls outside of the filing period is the April 2014 comments by McSharar in which he told Plaintiff "I am going to fuck you in the asshole with this broomstick!", McSharar's other comments as they related to Plaintiff's request to close the pod door, and his taunting of Plaintiff during the 2014 November incident. (*Id.* at 13.) The Court does not find, but is willing to assume for purpose of deciding the instant Motion, that McSharar's 2014 comments and behavior may be considered as part of the timely discriminatory conduct giving rise to Plaintiff's claim as they involve the same employee who engaged in the allegedly harassing behavior. *See Morgan*, 536 U.S. at 105 (noting that courts may consider the entire scope of the claim for the purposes of assessing liability, "including behavior alleged outside the statutory time period, . . . so long as an act contributing to that hostile environment takes place within the statutory time period"); *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010) (explaining that because hostile work environment claims occur "over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own," the court may consider "the entire scope of a hostile work environment claim, including behavior alleged

outside the statutory time period" (quotation marks omitted)); *Caravantes v. 53rd St. Partners, LLC*, No. 09-CV-7821, 2012 WL 96474, at *7 (S.D.N.Y. Jan. 12, 2012) ("A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice'. . . . Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." (citation omitted)).

Even considering the 2014 incidents, Plaintiff's hostile work environment claims still fail.  None of the conduct alleged by Plaintiff from the April 2014, November 2014, January 2020, or March 2020 incidents involves comments which reference to protected categories like sex or national origin-based motives.  (Compl. at 12–15.)  While rude, and abhorrent in the case of the April 2014 incident, an expression of anger or personal animus is not covered under Title VII.  As the Supreme Court has explained:

> Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at discrimination because of sex.  We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations.  The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (alterations and quotation marks omitted).  Indeed, courts have repeatedly emphasized that Title VII does not set forth "a general civility code for the American workplace."  *Id.*; *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (noting that the judiciary must "filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing'" (citation omitted)); *O'Dell v. Trans World Entm't Corp.*, 153 F. Supp. 2d 378, 386 (S.D.N.Y. 2001) ("[C]ourts must distinguish between merely offensive

or boorish conduct and conduct that is sufficiently severe or pervasive as to alter the conditions

of employment." (quotation marks omitted)), *aff'd*, 40 F. App'x 628 (2d Cir. 2002). At most,

Plaintiff believes that McSharar "hates [him] as a minority. He hates my accent, my Slavic

appearance, good manners, punctuality, [and] success. He suggests that he is better, because he

is Irish and born in America, despite of [sic] him being hateful, brutal[,] and primitive." (Compl.

at 35.) But Plaintiff's unsupported feelings of discrimination are insufficient to create a plausible

claim. *See Jackson v. City of New York*, 29 F. Supp. 3d 161, 172 (E.D.N.Y. 2014) (finding the

plaintiff's "gut feeling" insufficient to create an inference of discrimination); *Alvarez v. Rosa*,

No. 11-CV-3818, 2012 WL 651630, at *4 (S.D.N.Y. Feb. 28, 2012) (dismissing discrimination

claim where plaintiff did not allege "particular conduct or remarks . . . that could be viewed as

reflecting discriminatory animus"); *Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 371

(S.D.N.Y. 2005) ("[A] plaintiff's speculations, generalities, and gut feelings, however genuine,

when they are not supported by specific facts, do not allow for an inference of discrimination to

be drawn."); *accord Rivera*, 743 F.3d at 20 (explaining that "it is axiomatic that mistreatment at

work" is actionable "only when it occurs because of an employee's protected characteristic"

(alterations and emphasis omitted)); *Alfano*, 294 F.3d at 377 (noting that it is "important in

hostile work environment cases to exclude from consideration [cases] that lack a linkage or

connection to the claimed ground of discrimination;" otherwise a federal court would become "a

court of personnel appeals"); *Acosta v. City of New York*, 2012 WL 1506954, at *8 (S.D.N.Y.

2012) (dismissing hostile environment claim where there were "no allegations that any animus

subjective or objective stemmed from [the] plaintiff's membership in a protected class . . . [;]

[thus, the complaint] does not create a plausible inference of hostility based upon race or national

origin"). Accordingly, Plaintiff's hostile work environment claims under Title VII and the NYSHRL are dismissed.

### 2.  Section 1983 Claims

#### a.  Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment requires that all persons similarly situated be treated in the same manner." *Allen v. Cuomo*, 100 F.3d 253, 260 (2d Cir. 1996) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  In other words, "the Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quotation marks and emphasis omitted); *see also Bailey v. Town of Evans*, 443 F. Supp. 2d 427, 430 (W.D.N.Y. 2006) (same).  Put succinctly, to state a violation of the Equal Protection Clause, a plaintiff must allege "that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005); *see also Barrow v. Van Buren*, No. 12-CV-1268, 2015 WL 417084, at *22 (N.D.N.Y. Jan. 30, 2015) (same); *Nash v. McGinnis*, 585 F. Supp. 2d 455, 462 (W.D.N.Y. 2008) ("In order to plead a facially valid equal protection claim . . . [a] plaintiff must allege: (1) that he has been treated differently from similarly-situated [individuals], and (2) that the discrimination is based upon a constitutionally impermissible basis, such as race, religion, national origin, or some other protected right."). "Workplace discrimination claims asserting violations of Title VII and the Equal Protection Clause of the Fourteenth Amendment are analyzed under the same standard." *Brown v. City of*

*New York*, No. 10-CV-6491,  2011 WL 2693677, at *4 (S.D.N.Y. 2011) (citing *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998)); *see also Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) ("The elements of [an equal protection claim] are generally the same as the elements of [a Title VII claim] and the two must stand or fall together.").

      Thus, because Plaintiff fails to state a cause of action under Title VII, his Fourteenth Amendment claim fails for the same reasons as discussed above: because he has not alleged that any discrimination he suffered was based on a constitutionally impermissible basis. Consequently, Plaintiff's Fourteenth Amendment claim is dismissed.

### b.  Due Process

      Plaintiff appears to bring his due process claim under the Fifth Amendment, (*see* Compl. 4, 11), but because the Fifth Amendment Due Process Clause applies only to the federal government, Plaintiff's due process claim arises solely from the Fourteenth Amendment.  *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'"); *Schwamborn v. County of Nassau*, No. 06-CV-6528, 2008 WL 4282607, at *6 n.5 (E.D.N.Y. Sept. 16, 2008) (explaining that the plaintiff could not bring a Fifth Amendment claim against the county defendants as they are not federal officials), *aff'd*, 348 F. App'x 634 (2d Cir. 2009); *Mitchell v. Home*, 377 F. Supp. 2d 361, 372–73 (S.D.N.Y. 2005) ("The Fifth Amendment's Due Process Clause protects citizens against only federal government actors, not State officials.  Any due process rights [the] plaintiff enjoys as against state government officials . . . arise solely from the Fourteenth Amendment due process clause." (citation omitted)).  Still, even liberally construing Plaintiff's claim under Fourteenth Amendment due process, he has not

alleged that he has been deprived of "life, liberty, or property, without due process of law."  U.S.

CONST. amend. XIV.  While Plaintiff may have a property interest in his job as a corrections

officer, the Complaint acknowledges that he still has his job.  (*See* Compl. at 11.)  Further,

Plaintiff has completely failed to identify any process that he believes he was due and how

Defendants have deprived him of it.  In the absence of such deprivation, the Court finds that

Plaintiff has alleged no due process violation under the Fourteenth Amendment and that claim is

therefore dismissed.  *See Boyce v. Erie County*, No. 13-CV-619, 2014 WL 4923588, at \*4

(W.D.N.Y. Sept. 30, 2014) (dismissing the plaintiff's Fourteenth Amendment due process claim

for, inter alia, failing to name which defendants allegedly denied him due process); *Romeo v. Aid*

*to the Developmentally Disabled, Inc.*, No. 11-CV-6340, 2013 WL 1209098, at \*6 (E.D.N.Y.

Mar. 22, 2013) (dismissing procedural due process claim for failure to articulate a cognizable

liberty or property interest); *Walsh v. Goord*, No. 07-CV-246, 2007 WL 1572146, at \*5

(W.D.N.Y. May 23, 2007) (dismissing Fourteenth Amendment due process claim because the

plaintiff failed to specify the how he was deprived of a protected liberty interest without due

process).

### c.  *Monell* Claim

Plaintiff has named the County as a defendant.  "To state a claim under [§ 1983], the

plaintiff must show that a defendant, acting under color of state law, deprived him of a federal

constitutional or statutory right."  *Sykes*, 723 F.3d at 405–06 (citation omitted).  "Congress did

not intend municipalities to be held liable [under § 1983] unless action pursuant to official

municipal policy of some nature caused a constitutional tort."  *Monell v. Dep't of Soc. Servs. of*

*N.Y.C.*, 436 U.S. 658, 691 (1978).  Thus, "to prevail on a claim against a municipality under

[§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under

color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and

(5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of*

*Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008), *cert. denied*, 558 U.S. 933 (2009).  The fifth element

reflects the notion that "a municipality may not be held liable under § 1983 solely because it

employs a tortfeasor."  *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403

(1997); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (holding that a municipality

may not be held liable under § 1983 "by application of the doctrine of respondeat superior"

(italics omitted)).  Instead, there must be a "direct causal link between a municipal policy or

custom and the alleged constitutional deprivation."  *City of Canton v. Harris*, 489 U.S. 378, 385

(1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnments

should be held responsible when, and only when, their official policies cause their employees to

violate another person's constitutional rights.").

    A plaintiff may satisfy the "policy or custom" requirement by alleging one of the

following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by
> government officials responsible for establishing the municipal policies that caused
> the particular deprivation in question; (3) a practice so consistent and widespread
> that, although not expressly authorized, constitutes a custom or usage of which a
> supervising policy-maker must have been aware; or (4) a failure by policymakers
> to provide adequate training or supervision to subordinates to such an extent that it
> amounts to deliberate indifference to the rights of those who come into contact with
> the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted);

*see also Patterson v. County of Oneida*, 375 F.3d 206, 226–27 (2d Cir. 2004) (describing

methods of establishing *Monell* liability).  "[I]t is when execution of the government's policy or

custom . . . inflicts the injury that the government as an entity is responsible under § 1983."

*Monell*, 436 U.S. at 694.  The municipality must be the "moving force" behind Plaintiff's deprivation of federal rights.  *Brown*, 520 U.S. at 400, 404.

Even construed broadly, Plaintiff does not allege that the County engaged in a policy or custom which deprived him of his federal rights sufficient to impose liability under *Monell*.  (*See generally* Compl.)  Instead, Plaintiff alleges that the County should be vicariously liable for the acts of McSharar and for the failure of the Jail's administrative staff to stop his comments and conduct and for the County's failure to discipline him adequately.  (*Id.* at 11–13.)  But these allegations are insufficient as Plaintiff alleges no facts suggesting a policy or custom of the County that led to any deprivation of his rights.  *McKenzie v. City of Mount Vernon*, No. 18-CV-603, 2018 WL 6831157, at *7 (S.D.N.Y. Dec. 28, 2018) (dismissing *Monell* claim where the plaintiff did "not allege any facts suggesting a policy or custom that led to [the] alleged" constitutional deprivation); *Voltaire v. Westchester Cnty. Dep't of Soc. Servs.*, No. 11-CV-8876, 2016 WL 4540837, at *7 (S.D.N.Y. Aug. 29, 2016) (dismissing the plaintiff's claims against municipal employees in their official capacities where the complaint "provided no facts that would allow [the court] to plausibly infer that [the defendants] acted pursuant to a municipal custom or practice"); *Simms v. City of New York*, No. 10-CV-3420, 2011 WL 4543051, at *3 (E.D.N.Y. Sept. 28, 2011) (dismissing a *Monell* claim in light of the plaintiff's conclusory allegations which "d[id] not provide any facts that would allow the court to infer what . . . policies, practices, or customs contributed to or caused the deficiency"), *aff'd*, 480 F. App'x 627 (2d Cir. 2012); *Joyner-El v Giammarella*, No. 09-CV-2731, 2010 WL 1685957, at *6 (S.D.N.Y. Apr. 15, 2010) (dismissing any *Monell* claim because the plaintiff had "pointed to no policy or custom . . . that might plausibly have caused any of his alleged constitutional injuries"); *Overhoff v. Ginsburg Dev., L.L.C.*, 143 F. Supp. 2d 379, 389 (S.D.N.Y. 2001) (dismissing

*Monell* claim against municipality because of the plaintiff's failure to "allege that her constitutional rights were violated pursuant to any municipal policy or custom").  Because Plaintiff has failed to allege that the County had a policy or custom, let alone one that violated his federal rights, his *Monell* claim against the County is dismissed.

### 3.  Negligent or Intentional Infliction of Emotional Distress

"Under New York law, a claim of negligent infliction of emotional distress requires a showing of (1) extreme and outrageous conduct, (2) a causal connection between the conduct and the injury, and (3) severe emotional distress."  *Carabello v. N.Y.C. Dep't of Educ.*, 928 F. Supp. 2d 627, 645–46 (E.D.N.Y. 2013).  Similarly, a claim for intentional infliction of emotional distress under New York law requires "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress."  *Garrison v. Toshiba Bus. Sols. (USA). Inc.*, 907 F. Supp. 2d 301, 307 (E.D.N.Y. 2012) (citation omitted).  For either claim, "[t]he conduct forming the basis of the claim must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  *Id.* at 308 (quotation marks omitted) (discussing intentional infliction of emotional distress); *see also Carabello*, 928 F. Supp. 2d at 646 (holding the same with regard to negligent infliction of emotional distress).

Plaintiff has failed to allege that McSharar engaged in "extreme and outrageous conduct." *Garrison*, 907 F. Supp. 2d at 307.  The remarks and conduct at issue are plainly insufficient to support claims of negligent or intentional infliction of emotional distress.  The worst conduct at issue is that McSharar called Plaintiff an "idiot," told him he was going to "fuck [him] in the asshole with [a] broomstick," and said "[f]uck you Mick!"; while offensive, such comments fall

short as a matter of law as the type of conduct necessary to support negligent or intentional

infliction of emotional distress.  (Compl. at 12–15, 38–41); *Stuto v. Fleishman*, 164 F.3d 820,

827–29 (2d Cir. 1999) (affirming dismissal of an intentional infliction of emotional distress

claim on a Rule 12(b)(6) motion where the plaintiff failed to allege conduct that was sufficiently

extreme and outrageous).  Instead, Plaintiff makes conclusory allegations that McSharar's

behavior toward Plaintiff has caused him severe emotional distress, inducing eczema, headaches,

anxiety, blurred vision, among other symptoms and effects.  (Compl. at 12–16.)  But such

conclusory allegations regarding McSharar's conduct over the years are not enough.  *See*

*Medcalf v. Walsh*, 938 F. Supp. 2d 478, 490 (S.D.N.Y. 2013) (dismissing intentional infliction of

emotional distress claim where the complaint only made conclusory allegations that the plaintiff

suffered severe emotional distress); *Semper v. N.Y. Methodist Hosp.*, 786 F. Supp. 2d 566, 587

(E.D.N.Y. 2011) ("Acts which merely constitute harassment, disrespectful or disparate treatment,

a hostile environment, humiliating criticism, intimidation, insults or other indignities fail to

sustain a claim of [intentional infliction of emotional distress] because the conduct alleged is not

sufficiently outrageous." (citation omitted)); *White v. Martin*, 23 F. Supp. 2d 203, 208 (D. Conn.

1998) (explaining that general allegations of discrimination and harassment "fall short of

misconduct which exceeds 'all bounds usually tolerated by a decent society'"), *aff'd*, 198 F.3d

235 (2d Cir. 1999); *Klein v. Metro. Child Servs., Inc.*, 954 N.Y.S.2d 559, 562 (App. Div. 2012)

(dismissing intentional infliction of emotional distress claim where "the cause of action . . . states

little more than the conclusion that plaintiff suffered extreme and grievous mental distress as a

result of the extreme and outrageous behavior of the defendants" (alterations and quotation

marks omitted)); *Gray v. Schenectady City Sch. Dist.*, 927 N.Y.S.2d 442, 445 (App. Div. 2011)

(finding the defendant's "mere inaction after receiving complaints about [another employee's]

behavior . . . cannot be considered the type of extreme and outrageous conduct that is utterly intolerable in a civilized community" (quotation marks omitted)).  The alleged conduct here, while hardly a model of decency, cannot be deemed as a matter of law "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 90 (N.Y. 1983) (quoting from RESTATEMENT (SECOND) OF TORTS § 46 cmt. d).  Thus, Plaintiff's claims for negligent and intentional infliction of emotional distress are dismissed.

### III.  Conclusion

For the foregoing reasons, Defendants' Motions To Dismiss is granted.  Because this is the first adjudication of Plaintiff's claims, the Complaint is dismissed without prejudice. Plaintiff may file an amended complaint within 30 days of the date of this Opinion & Order.  The amended complaint will replace, not supplement, the original complaint.  Failure to file an amended complaint could result in dismissal of this case with prejudice.  The Clerk of Court is respectfully directed to terminate the pending Motion.  (Dkt. No. 7.)

 SO ORDERED.

Dated:       September 27, 2021
             White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE